Joel B. Robbins, Esq. (011065)
Jesse M. Showalter, Esq. (026628)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 400-4400
joel@robbinsandcurtin.com
jesse@robbinsandcurtin.com

Michael F. Bonamarte, IV (IL 6285779)
Julie Ann Murphy (IL 6290303)
Daisy Ayllon (IL 6317048)
**LEVIN & PERCONTI**
325 N. La Salle Drive, #300
Chicago, Illinois 60654
Tel: (312) 332-2872
mfb@levinperconti.com
jam@levinperconti.com
day@levinperconti.com
*Pro Hac Vice Admission Forthcoming*
*Co-counsel for Plaintiff*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Gonzalez, individually and on behalf of the statutory beneficiaries of Ramon Timothy Lopez, and in her capacity as the Personal Representative of the Estate of Ramon Timothy Lopez,<br><br>    Plaintiff,<br><br>v.<br><br>City of Phoenix, a municipality; Bobbi Cozad, an individual; Oscar Jimenez, an individual; Brett Lingenfelter, an individual; Alonso Lopez, an individual; Roszell Mosley, an individual; Todd Stevens, an individual; and Andrew Williams, an individual,<br><br>    Defendants. | No. _____<br><br><br>**COMPLAINT**<br><br><br>**(Tort-Civil Rights-42 U.S.C. § 1983)**<br><br>(Jury Trial Demanded) |

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

Laura Gonzalez, individually and on behalf of the statutory beneficiaries of Ramon Timothy Lopez, and in her capacity as the Personal Representative of the Estate of Ramon Timothy Lopez against Defendants alleges as follows:

<strong><u>PARTIES</u></strong>

1.      Plaintiff's decedent Ramon Timothy Lopez was, at the time of his death, a resident of Maricopa County, Arizona.

2.      Plaintiff Laura Gonzalez is the surviving mother of Ramon Timothy Lopez and brings this action on her own behalf and as statutory trustee for all statutory beneficiaries pursuant to A.R.S. § 12-611, *et seq*. Ms. Gonzalez is a resident of the State of California.

3.      Plaintiff also brings this action on behalf of the Estate of Ramon Timothy Lopez, for which she is the Personal Representative.

4.      Raymond Lopez is the surviving father of Ramon Timothy Lopez and is a statutory beneficiary pursuant to A.R.S. § 12-611, *et seq*. Upon information and belief, Mr. Lopez resides in the State of California.

5.      N.L. is the minor child of Ramon Timothy Lopez and is a statutory beneficiary pursuant to A.R.S. § 12-611, *et seq*. N.L. resides in the State of Arizona.

6.      C.R. is the minor child of Ramon Timothy Lopez and is a statutory beneficiary pursuant to A.R.S. § 12-611, *et seq*. C.R. resides in the State of Arizona.

7.      R.L. is the minor child of Ramon Timothy Lopez and is a statutory beneficiary pursuant to A.R.S. § 12-611, *et seq*. R.L. resides in the State of California.

8.      M.D. is the minor child of Ramon Timothy Lopez and is a statutory beneficiary pursuant to A.R.S. § 12-611, *et seq*. M.D. resides in the State of Nevada.

9.      Defendant City of Phoenix is a municipality and a political subdivision of the State of Arizona organized and existing under the laws of the State of Arizona.

10.     Bobbi Cozad is an individual and a citizen of Arizona.

11.     At all times alleged in the Complaint, Bobbi Cozad was a police officer employed by the City of Phoenix acting within the course and scope of her employment, and

under color of state law. She is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

12.     Oscar Jimenez is an individual and a citizen of Arizona.

13.     At all times alleged in the Complaint, Oscar Jimenez was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

14.     Brett Lingenfelter is an individual and a citizen of Arizona.

15.     At all times alleged in the Complaint, Brett Lingenfelter was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

16.     Alonso Lopez is an individual and a citizen of Arizona.

17.     At all times alleged in the Complaint, Alonso Lopez was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

18.     Roszell Mosley is an individual and a citizen of Arizona.

19.     At all times alleged in the Complaint, Roszell Mosley was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

20.     Todd Stevens is an individual and a citizen of Arizona.

21.     At all times alleged in the Complaint, Todd Stevens was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

22.     Andrew Williams is an individual and a citizen of Arizona.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

23.     At all times alleged in the Complaint, Andrew Williams was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

24.     Defendant City of Phoenix is responsible for the conduct of its officers and employees, including Defendants Cozad, Jimenez, Lingenfelter, Lopez, Mosley, Stevens, and Williams and is liable to Plaintiff under state law for the damages resulting from their conduct under the theory of *respondeat superior*.

25.     In this Complaint, Defendants Cozad, Jimenez, Lingenfelter, Lopez, Mosley, Stevens, and Williams are referred to collectively as "the Officer Defendants."

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over Plaintiff's federal civil rights claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

27.     This Court has supplemental jurisdiction over claims arising under the laws of the State of Arizona under 28 U.S.C. § 1367(c).

28.     The events giving rise to this action occurred in Maricopa County, Arizona. Defendant City of Phoenix is a political subdivision of the State of Arizona, and, on information and belief, the Officer Defendants all reside within Maricopa County, Arizona. Thus, venue is proper in the District of Arizona under 28 U.S.C. § 1391(b).

29.     As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim pursuant to A.R.S. § 12-821.01 upon Defendant City of Phoenix. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of statute.

30.     The events that form the basis of this Complaint occurred on or about August 4, 2020, in Maricopa County.

## JURY DEMAND

31.     Plaintiff hereby demands a jury trial.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

## **FACTUAL ALLEGATIONS**

32.     On August 4, 2020, at approximately 1018 hours, Phoenix police received a radio call requesting a welfare check on a subject behaving oddly. The subject was reportedly looking into parked vehicles and scratching his genitals through his clothing.

33.     The subject was described as a Hispanic male with tattoos on his face, and wearing ripped tan shorts.

34.     Defendants Stevens, Williams, and Mosley arrived separately at North 53rd Avenue and West Indian School Road. Initially, they were unable to locate the subject matching the description; however, they ultimately located him in the parking lot near the El Super Grocery Store located at 5127 West Indian School Road.

35.     The subject was Ramon Timothy Lopez (hereafter, "Timothy Lopez").

36.     Defendants Stevens, Williams, and Mosley observed Timothy acting "erratic" and peering into parked vehicles. The officers made the decision to only observe Timothy because he had not broken any laws.

37.     Timothy began running east across North 51st Avenue into the Grand Stop liquor store located at 4039 North 51st Avenue. Timothy reportedly did not utilize the crosswalk when he crossed the street.

38.     Defendant Stevens' body-worn camera (hereafter, "BWC") captures him saying to Defendant Williams, "We don't have anything on him, right?" Williams replied, "We'll let him get tired a little bit more."

39.     Immediately after, Defendant Mosley asked, "What do y'all want to do?" to which Stevens responded, "I don't think we really have anything on him." Mosley replied, "Jaywalking, boy! Woo!" and began laughing and clapping his hands. Defendant Stevens replied, "Alright, let's go then. Go!"

40.     While in Grand Stop, Timothy allegedly took a $1.99 bottle of Lipton Iced Tea without paying.

41.     When Timothy exited the store, he encountered Defendant Stevens and began running.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

42.     Defendant Stevens chased Timothy on foot.

43.     Defendant Stevens eventually caught up to Timothy and tackled him to the ground on 51st Avenue.

44.     At 10:00 a.m. on August 4, 2020, the temperature in Phoenix was approximately 100 degrees.

45.     Defendant Williams arrived at the scene and assisted Stevens with placing Timothy in handcuffs behind his back. Defendant Mosley arrived shortly after and assisted Stevens and Williams with cuffing Timothy. One of the officers can be heard joking, "You're on live Facebook."

46.     Defendants Stevens, Williams, and Mosley applied pressure to Timothy as he lay face down on the ground, handcuffed, and struggling to breathe. Timothy can be heard saying, "You guys are killing me."



ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

47.     Defendant Jimenez then arrived and assisted in applying a RIPP Restraint (a strap used to immobilize the legs) and attached the RIPP Restraint clip to the handcuff chain.

 

48.     From the time that Timothy was tackled to the ground, to the time he was picked up, he was lying face down on the hot August pavement. This lasted for roughly six (6) minutes.

49.     The risks of injury and death from holding Timothy down on the hot pavement for this length of time were obvious.

50.     Notably, following this incident, Defendant Stevens stated, "I almost like passed out in the middle of the road, man. I overdid it." A fellow officer can be heard off-camera saying, "It's hot, it's way hot."

51.     Timothy was wearing ripped shorts and a t-shirt.

52.     Timothy should not have been held face down as Defendant City of Phoenix knows that positional asphyxia risks are well-known and obvious.

53.     Timothy had a long history of mental illness and substance abuse. Throughout the encounter, the BWC shows that Timothy was in obvious distress.

54.     While Timothy was still on the ground, Defendant Williams requested that the Phoenix Fire Department respond to the scene "to check [Timothy] out [because] he's on some sort of 237." Upon information and belief, radio code 237 refers to someone under the influence of a drug.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

55.     Following the incident, Defendant Mosley remarked to a fellow officer, "I don't know, man, he probably did a bunch of drugs." "Obviously, he had strength out of this world."

56.     Defendants Mosley and Jimenez picked Timothy up and carried him to the back of a nearby patrol Tahoe.

57.     In violation of City of Phoenix policies, Defendants Mosley, Jimenez, and Lingenfelter placed Timothy into the rear of the Tahoe, face down, while he was still handcuffed behind his back and RIPP restrained.

 

58.     Defendants Cozad and Lopez then transported Timothy to the parking lot of a nearby Walgreens and, upon their arrival, discovered Timothy was unresponsive.

59.     Officers removed Timothy from the vehicle, and an officer poured water on Timothy's head while Defendant Lingenfelter attempted to find a pulse. He observed that Timothy was "seizing" and that "his eyes were twitching pretty good."

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

60.     Timothy's eyes were rolling back in his head.



61.     Phoenix Fire personnel arrived and began performing CPR on Timothy.

62.     EMS transported Timothy to Valleywise Emergency - Maryvale, where he was pronounced deceased at 11:21 a.m.

63.     The Maricopa County Medical Examiner determined that Timothy Lopez's death was caused by "cardiac arrest in the setting of methamphetamine intoxication, dilated cardiomyopathy, and physical restraint."

### Defendant City of Phoenix's Policies, Customs, and Procedures

64.     Defendant City of Phoenix is responsible for training and supervising Phoenix police officers regarding the reasonable use of force.

65.     Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the reasonable use of force.

66.     The City of Phoenix has a policy, custom, or practice of training officers to "escalate" situations. That is, to use more force than is reasonably necessary or appropriate to respond to situations.

67.     The City of Phoenix knows that its policy, custom, or practice of training officers to "escalate" situations results in unreasonable uses of force.

68.     The City of Phoenix's policy, custom, or practice of training officers to "escalate" situations increases the incidence of uses of unreasonable force.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

69.     The City of Phoenix has a policy, custom, or practice of training and allowing officers to use certain submission techniques, including prone positioning, which poses a significant risk of asphyxiation and death, resulting in unreasonable uses of force.

70.     The City of Phoenix's policy, custom, or practice of training and allowing officers to utilize submission techniques such as prone positioning increases the incidence of uses of unreasonable force.

71.     The City of Phoenix has a policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force.

72.     The purpose of the City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force is to prevent the public and the victims of police violence from learning about the real facts involved in the uses of force.

73.     The purpose of the City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police violence is to prevent victims of police violence from bringing lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

74.     The City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police violence creates a culture of impunity and encourages the City of Phoenix's officers to use excessive, unnecessary, and unreasonable force.

75.     The City of Phoenix has a policy, custom, or practice of "purging" officer discipline records.

76.     The purpose of the City of Phoenix's policy, custom, or practice of purging officer discipline records is to prevent the public and the victims of police violence from learning about the historical uses of unreasonable force and other infractions of the police officers involved in an incident of unreasonable force.

77.     The purpose of the City of Phoenix's policy, custom, or practice of purging officer discipline records is to prevent victims of police excessive force from bringing

lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

78.     The City of Phoenix's policy, custom, or practice of purging officer discipline records has created a culture of impunity that encourages the City of Phoenix's officers to use excessive force when it is not reasonable.

79.     The City of Phoenix has a policy, custom, or practice of failing to fully investigate incidents involving police officer uses of force and in-custody deaths.

80.     The purpose of the City of Phoenix's policy, custom, or practice of failing to fully investigate incidents involving police officer uses of force and in-custody deaths is to prevent the public and the victims of police violence from learning about the real facts involved in the uses of force.

81.     The purpose of the City of Phoenix's policy, custom, or practice of failing to fully investigate incidents involving police officer uses of force and in-custody deaths is to prevent victims of police violence from bringing lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

82.     Defendant City of Phoenix is responsible for training and supervising Phoenix police officers regarding interaction with a non-violent citizen who is either mentally ill or intoxicated because of drug use.

83.     Defendant City of Phoenix has failed to properly train and supervise its police officers regarding police officer interaction with the mentally disturbed, whether such individuals are suffering from mental illness or intoxication.

84.     Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the dangers of positional asphyxia.

85.     Defendant City of Phoenix has failed to properly train and supervise its police officers regarding handling mentally ill and emotionally disturbed or distressed subjects.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

**Defendant City of Phoenix's Long History of Death by Prone Restraint**

86.     Defendant City of Phoenix has known for years that placing a handcuffed and RIPP restrained individual face down for any period of time poses a serious risk of sudden death.

87.     Defendant City of Phoenix has a long history of causing deaths in this fashion.

- On February 6, 2019, a naked Casey Wells died after being RIPP restrained and placed face down with Phoenix police officers on his back and his neck.

- On January 4, 2017, Muhammad Muhaymin died in the custody of Phoenix police officers with at least three officers on his legs and back, with another applying a knee to his head and neck while he cried out, "I can't breathe."

- On December 25, 2014, Edgardo Figueroa died after he was handcuffed and left face down in the back of a Phoenix police vehicle.

- In December 2011, Ernest "Marty" Atencio died after he was handcuffed and held face down by Phoenix police and Maricopa County Sheriff's officers.

88.     Despite this history and its knowledge of the risks, Defendant City of Phoenix continues to train its officers to handcuff and restrain subjects and place them face down even though it knows that doing so creates a significant risk of injury and death.

89.     Defendant City of Phoenix also continues to permit its officers to leave subdued and restrained subjects in the hot Arizona sun, even though this creates a significant risk of injury and death, and even though there is no legitimate police benefit in doing so.

**COUNT ONE – 42 U.S.C. § 1983**
**Violation of Fourth Amendment Right to be Free from**
**Unlawful Seizures, False Arrest, and Excessive Force**
**(Officer Defendants)**

90.     The foregoing paragraphs are incorporated as if fully set forth herein.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ◆ Fax: (602) 265-0267

91.     Timothy Lopez had a Fourth Amendment right to be free from unlawful searches and seizures, from false arrest, and from excessive force.

92.     The Officer Defendants violated Timothy's Fourth Amendment rights when they arrested him without probable cause to believe that he had committed a crime.

93.     The Officer Defendants violated Timothy Lopez's Fourth Amendment rights when, acting in concert with one another, they restrained him in a prone position for longer than reasonably necessary.

94.     The Officer Defendants violated Timothy Lopez's Fourth Amendment rights when they failed to de-escalate or disengage the other officers from their use of unreasonable and excessive force.

95.     Defendants Mosley, Jimenez, and Lingenfelter violated Timothy Lopez's Fourth Amendment rights when, acting in concert with one another, they placed him in the back of the police Tahoe face down while being handcuffed behind his back and RIPP restrained.

96.     Defendants Cozad and Lopez violated Timothy Lopez's Fourth Amendment rights when, acting in concert with one another, they transported Timothy Lopez, who was face down, handcuffed behind his back, and RIPP restrained in the back of their police Tahoe, to another location.

97.     The Fourth Amendment violations of all of the Officer Defendants were independent moving forces of Timothy Lopez's death.

98.     Because the Officer Defendants' actions were done knowingly, intentionally, and maliciously, Plaintiff is entitled to recover compensatory and punitive damages.

## <u>COUNT TWO – 42 U.S.C. § 1983</u>
### Violation of Fourteenth Amendment Right to Familial Society and Companionship
### (Officer Defendants)

99.     The foregoing paragraphs are incorporated as if fully set forth herein.

100.    The reckless, intentional, and deliberate acts and omissions of the Officer Defendants were the direct legal cause of the deprivation of Plaintiff's and all statutory

beneficiaries of Timothy Lopez's constitutionally protected rights under the Fourteenth Amendment to the care, companionship, and familial society of their son and father, Timothy Lopez.

101.    The acts and omissions of the Officer Defendants were committed knowingly, intentionally, and maliciously, and for the purpose of causing harm.

### COUNT THREE – 42 U.S.C. § 1983
### *Monell* Claims for Violation of Fourth and Fourteenth Amendment Rights
### (City of Phoenix)

102.    The foregoing paragraphs are incorporated as if fully set forth herein.

103.    The City of Phoenix was deliberately indifferent to the proper training of their employees, including the Officer Defendants, regarding the appropriate use of force.

104.    The City of Phoenix failed to train its officers regarding the proper use of force, including submission techniques that pose a risk of serious injury or death to the subject and the risk of positional asphyxia, particularly against individuals who are mentally disturbed, restrained, or handcuffed.

105.    The City of Phoenix failed to train its officers regarding proper interactions with individuals who are mentally disturbed, whether because of mental illness or intoxication.

106.    The City of Phoenix had policies, customs, or procedures that were deliberately indifferent to the rights of citizens to be free from excessive and unreasonable force.

107.    The City of Phoenix had policies, customs, or procedures that encouraged police officers to escalate situations and allowed them to utilize submission techniques, which posed a significant risk of injury or death, thereby using more force than reasonably necessary.

108.    The City of Phoenix created a culture of impunity that encouraged officers to use deadly force by purging officer discipline records and delaying or slowing the release of information regarding use of force incidents.

109.     The City of Phoenix was deliberately indifferent to the Fourth and Fourteenth Amendment rights of members of the public, including Timothy Lopez, Laura Gonzalez, Raymond Lopez, and the minor children of Timothy Lopez.

110.     The City of Phoenix's unconstitutional policies, customs, and procedures caused the deprivations of Timothy Lopez's rights under the Fourth Amendment to the United States Constitution.

111.     The City of Phoenix's unconstitutional policies, customs, and procedures caused the deprivation of Plaintiff's and all statutory beneficiaries of Timothy Lopez's rights to familial society and companionship under the Fourteenth Amendment to the United States Constitution.

112.     The City of Phoenix is liable for all damages arising from the constitutional violations it caused.

## COUNT FOUR - WRONGFUL DEATH
### (City of Phoenix)

113.     At all relevant times, the Officer Defendants were acting in the course and scope of their employment for Defendant City of Phoenix.

114.     The City of Phoenix is vicariously liable for the acts of the Officer Defendants.

115.     The Officer Defendants caused Timothy Lopez's death through their actions.

116.     The Officer Defendants caused Timothy Lopez's death by means of intentional conduct, or, in the alternative, willful and wanton conduct, or, in the alternative, grossly negligent conduct, or, in the alternative, negligent conduct.

117.     The City of Phoenix ratified the Officer Defendants' conduct.

118.     The Officer Defendants' conduct was not justified.

119.     Defendant City of Phoenix owes a duty of care to members of the public with whom they come into contact and/or investigate, including Timothy Lopez.

120.     Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers with respect to the use of force and means of restraint in situations such as these.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ◆ Fax: (602) 265-0267

121. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers with respect to de-escalation techniques.

122. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers regarding interaction with non-violent citizens in a mentally disturbed state.

123. Defendant City of Phoenix breached its duty by failing to adequately train and supervise its officers regarding positional asphyxia.

124. As a result of these breaches, Defendant City of Phoenix caused Timothy's death.

125. Defendant City of Phoenix and its officers and employees that participated in the incident with Timothy Lopez acted in concert with each other or pursuant to a common design.

126. Defendant City of Phoenix and its officers and employees that participated in the incident with Timothy Lopez failed to use reasonable care and recklessly disregarded obvious risks of harm to Timothy Lopez.

127. Defendant City of Phoenix and its officers and employees caused the death of Timothy Lopez by their failures to use reasonable care and by their reckless disregard for the obvious risks of harm to Timothy Lopez.

128. Defendant City of Phoenix is vicariously liable for the conduct of its employees for causing Timothy's death.

129. As a direct result of Defendant City of Phoenix's intentional, negligent, grossly negligent, deliberately indifferent, willful, wanton, and/or reckless conduct, Timothy was killed, and Plaintiff and all statutory beneficiaries of Timothy sustained damages, including pain and suffering, grief, emotional distress, loss of support, loss of love and affection, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from the death of Timothy Lopez, pain, grief,

sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future, and economic losses and loss of income, hedonic damages, and Timothy Lopez's pre-death pain and suffering and loss of life;

    B.    For special damages, including but not limited to the expenses of medical treatment, burial, and funeral;

    C.    For punitive damages against the Officer Defendants to the extent permitted by law;

    D.    For pre- and post-judgment interest to the extent permitted by law;

    E.    For attorneys' fees and taxable costs under 42 U.S.C. § 1988 to the extent permitted by law; and

    F.    Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: August 2, 2021

**ROBBINS & CURTIN, p.l.l.c.**

By:    /s/ Jesse M. Showalter
        Joel B. Robbins
        Jesse M. Showalter
        301 E. Bethany Home Road
        Suite B-100
        Phoenix, Arizona 85012

        -and-

        Michael F. Bonamarte, IV
        Julie Ann Murphy
        Daisy Ayllon
        325 N. La Salle Drive, #300
        Chicago, Illinois 60654
        *Co-counsel for Plaintiff*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ◆ Fax: (602) 265-0267